897 A.2d 1015

IN THE MATTER OF ANTHONY F. PUGLISI, JR.

Argued April 4, 2006—Decided May 17, 2006.

*Fredric J. Gross* argued the cause for appellant Anthony F. Puglisi, Jr.

*Susanne Culliton,* Deputy Attorney General, argued the cause for respondent Board of Trustees, Police and Firemen's Retirement System (*Zulima V. Farber,* Attorney General of New Jersey, attorney; *Michael J. Haas,* Assistant Attorney General, of counsel; *Christine R. Lucarelli,* Deputy Attorney General, on the brief).

PER CURIAM.

Petitioner Anthony F. Puglisi, Jr. served as a police officer for the Police Department of the City of New Brunswick from 1965 until his retirement in 1999. In 1990, Puglisi, who was a lieutenant at the time, and several other police officers filed a civil rights lawsuit in federal court against various City administrators and elected officials alleging that those individuals engaged in political discrimination in violation of two federal civil rights statutes and the New Jersey Constitution. In 1998, Puglisi and his co-plaintiffs reached a settlement with the City as a result of which Puglisi was promoted to the rank of captain and immediately began a one-year terminal leave period at a captain's salary. Puglisi also agreed to retire at the end of the terminal leave period. Finally, Puglisi received $30,000 in compensatory damages. The parties agree that the settlement did not constitute an admission of wrongdoing by the City.

Puglisi retired from the police department as a captain on an age and service pension under the Police and Firemen's Retirement System (PFRS), *N.J.S.A.* 43:16A–1 to –68. He received credit with the PFRS for the year of terminal leave at a captain's salary and thereafter collected retirement checks reflecting the higher salary. Several months after his retirement, in a matter unrelated to Puglisi's discrimination lawsuit, an arbitrator settled the terms of a new collective negotiations agreement between the City and the New Brunswick Policemen's Benevolent Association. That agreement included a retroactive increase in base pay for all supervisory police and covered the period that Puglisi was on terminal leave. Although Puglisi was no longer on active service, he was deemed entitled to the increase because the arbitrator found that the increase should not be limited to officers on active service.

The City, however, refused to make the retroactive payment to Puglisi, thereby forcing him to seek relief in federal court to obtain the retroactive pay. The City complied with a federal court order and informed the PFRS of the additional terminal leave pay

that was due to Puglisi. During the compliance process, the PFRS realized that Puglisi's pension included an increase of pensionable base salary reflecting his promotion to captain when, according to the PFRS, his payments should have been based only on his lieutenant's salary. That information was presented to the Committee on Creditable Salary, a committee appointed by the Board of Trustees of the PFRS (Board). After review of the matter, the Committee recommended to the Board that Puglisi "can collect the additional salary as captain, but the additional salary earned ... is not creditable in the PFRS as he was on terminal leave from the day he was promoted as captain to the date of his retirement."

Puglisi appealed the Committee's recommendation to the Board, arguing that he was entitled to a pension that included the increased captain's salary because he had settled his case against the City with the "expectation that his promotion would result in higher pension payments." In a letter decision, the Board characterized Puglisi's promotion as "severance pay" and informed him that although he could retain the previous pension overpayments, the Board would reduce his creditable salary, thereby denying him pension benefits based on a captain's salary.[1]

Puglisi appealed the Board's decision, and the case was transmitted to the Office of Administrative Law. An Administrative Law Judge (ALJ) found that Puglisi's promotion was not in anticipation of retirement and ordered the Board to reinstate the higher pension payments. The Board rejected the ALJ's recommended decision, again found that Puglisi's promotion was in

---

[1] Although the issue was not raised in any of the prior proceedings, after oral argument Puglisi submitted a letter to the Court claiming that the Board had reneged on its decision to allow him to retain the previous overpayments and subsequently garnished Puglisi's pension payments to recapture those monies. That issue is not properly before this Court and, in any event, its resolution is unnecessary to our disposition. However, Puglisi may raise that issue in an appropriate filing to the Board and, if it is shown that the Board indeed recaptured those overpayments, then the Board should take appropriate action to honor any commitments that it may have made.

anticipation of retirement, and concluded that the promotion could not be considered in calculating his pension payments. Puglisi appealed, and the Appellate Division affirmed the Board's decision. We granted Puglisi's petition for certification, 185 *N.J.* 391, 886 *A.*2d 662 (2005), and now affirm.

## I.

■ Employees that meet the statutory definition of a police officer, firefighter, and other specific personnel receive pensions and other benefits under the PFRS. *N.J.S.A.* 43:16A–1 to –68. In determining an individual's pension level, the Board is required by *N.J.S.A.* 43:16A–1(26) to exclude certain types of compensation:

"Compensation" shall mean the base salary, for services as a member as defined in this act, which is in accordance with established salary policies of the member's employer for all employees in the same position *but shall not include individual salary adjustments which are granted primarily in anticipation of the member's retirement* or additional remuneration for performing temporary duties beyond the regular workday.

[Emphasis added.]

*N.J.A.C.* 17:4–4.1(a) also precludes salary adjustments made in anticipation of retirement:

(a) The compensation of a member subject to pension contributions and creditable for retirement and death benefits in the system shall be limited to base salary, and shall not include extra compensation.

1. "Base salary" means the annual compensation of a member, in accordance with established salary policies of the member's employer for all employees in the same position, or all employees covered by the same collective bargaining agreement, which is paid in regular, periodic installments in accordance with the payroll cycle of the employer.

2. "Extra compensation" means individual salary adjustments which are granted *primarily in anticipation of a member's retirement* or as additional remuneration for performing temporary duties beyond the regular workday. . . .

[Emphasis added.]

■ Puglisi argues that the Board improperly excluded his promotion to captain and resultant salary increase on the basis that they were "primarily in anticipation of [his] retirement."

*N.J.S.A.* 43:16A–1(26); *N.J.A.C.* 17:4–4.1(a).[2] We find that the Appellate Division correctly analyzed the issue when it stated:

> The purpose of *N.J.S.A.* 43:16A–1(26) and the implementing regulations is to protect the actuarial soundness of the pension fund by prohibiting the use of "ad hoc salary increases intended to increase retirement allowances without adequate compensation to the [pension] fund" in calculating pensions. Therefore, any salary increase made primarily in anticipation of retirement must be disregarded in determining the amount of a retiree's pension, even if the increase was also designed to achieve other objectives, such as increasing the overall amount of the employee's compensation.
>
> Appellant's promotion to the position of captain and consequent salary increase was an "individual salary adjustment" made "primarily in anticipation" of his retirement within the intent of *N.J.S.A.* 43:16A–1(26). In fact, pursuant to appellant's settlement agreement with New Brunswick, he stopped working as a police officer and started receiving terminal leave payments at the same time he was promoted. Consequently, appellant's retirement from active duty was not simply anticipated when he began receiving a captain's salary but had actually occurred. Although appellant's promotion also may have served other objectives, such as settling his claims against New Brunswick, conferring him with the status of a captain and granting him higher terminal leave payments, the promotion was nonetheless made in anticipation of appellant retiring and beginning to receive a pension after receiving the one-year terminal leave provided under the settlement agreement. Therefore, the Board correctly concluded that appellant's pension should be recalculated on the basis of a lieutenant's salary.
>
> [Citations omitted.]

We find that the panel's reasoning accords with the purposes and principles undergirding the pension system, and that its conclusion is supported by the law and facts in this matter. We reject Puglisi's remaining arguments for the reasons expressed by the Appellate Division. The judgment of the Appellate Division is therefore affirmed.

*For affirmance*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA-SOTO—7.

*Opposed*—None.

---

[2] Puglisi also argues that his pension should reflect the higher salary level granted to supervisory police under the collective negotiations agreement. At oral argument, the Board conceded that Puglisi's pension payments should reflect the pay increase granted to lieutenants. Therefore, that issue is not before the Court.